**CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, a corporation, Plaintiff,**

**v.**

**EDWARD HINES LUMBER COMPANY, a corporation, Defendant.**

**Civ. No. 70 C 202.**

United States District Court,
N. D. Illinois, E. D.

Dec. 28, 1970.

T. G. Schuster, J. L. Pilon and P. M. Lee, Chicago, Ill., for plaintiff.

Raymond F. Brodl and Brodl & Gillespie, William H. Towle and Hardman, Kerwin & Towle, Chicago, Ill., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND JUDGMENT ORDER

PERRY, District Judge.

### FINDINGS OF FACT

1. This cause is submitted upon a Stipulation of facts and cross motions for summary judgment.

2. Plaintiff is a common carrier by railroad subject to the provisions of the Interstate Commerce Act, and is an Illinois corporation with principal offices in Chicago, Illinois.

3. Defendant is a Delaware corporation operating a lumberyard in Chicago, Illinois, which is served by plaintiff's track and railroad.

4. Demurrage rules and charges governing railcars placed by plaintiff for unloading at defendant's lumberyard are contained in Section 1 of Tariff 4–H. The tariff imposes the duty to unload and return a car within two days. When the two day "free time" expires demurrage is imposed at the rate of $7.-50 per day for a prescribed number of days and thereafter at a rate of $15.00 per day until the car is returned to the railroad. A provision in the tariff allows for averaging demurrage charges against demurrage credits, and defendant was under this average agreement.

5. On January 26, 1967, defendant had a total of thirteen railcars on its delivery tracks at its Chicago lumberyard ready for unloading.

6. On January 26, 1967, a snowstorm of sudden and unprecedented severity hit Chicago. Official United States Weather Bureau reports show that the 23.0 inch snowfall of January 26, 1967, established a new record, eclipsing the old record of 19.2 inches for a single storm. Also 19.8 inches fell within the 24 hour period compared with the old record of 14.0 inches. High winds resulted in 4 to 6 foot drifts.

7. By January 30, 1967, defendant had cleared the snow from its yard and the delivery tracks within its yard and was ready and willing to accept loaded railcars and return empty railcars to plaintiff.

8. On February 10, 1967, plaintiff finally cleared its tracks leading to defendant's yard and was capable of delivering loaded cars to defendant.

9. During the period from January 26, 1967 until February 10, 1967, when plaintiff was able to resume switching, a total of 34 loaded railcars had accumulated on the plaintiff's railroad at Chicago for delivery to defendant. Subsequent to February 10, 1967, additional cars continued to arrive and defendant handled these cars for unloading as they arrived and concurrently handled the 34 cars which had accumulated. On May 17, 1967, the final car of the 34 was handled and returned empty to the plaintiff.

10. The plaintiff notified defendant that the accumulated cars were constructively placed under the tariff. Since defendant was unable to unload each car

within the two day "free time", a total of $23,370.00 in demurrage charges was assessed. Defendant paid $7,095.50 which it calculates would have been the demurrage which would have accrued except for the blizzard. Plaintiff sues to collect the balance of $16,274.50.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over this case pursuant to 28 U.S.C. Section 1337 and 49 U.S.C. Sections 1–26.

2. A demurrage tariff confers rights and imposes duties as a matter of law. There is no freedom of contract between the carrier and the shipper to vary or modify the tariff as the parties might desire. The shipper is not free to stipulate the circumstances which would relieve him from liability and those which he would assume.

3. The duty to pay demurrage being imposed as a matter of law, an intervening act of God excuses the duty. Since the shipper cannot vary the terms of the tariff by agreement, there is no reason to impose the unqualified liability that would accrue if a contract were involved and liability for an act of God were assumed.

4. The "great Chicago blizzard" of January 26, 1967, was an act of God which excuses defendant, who acted reasonably in the circumstances, from liability for the demurrage which accrued as a consequence of the blizzard.

### JUDGMENT ORDER

The cross motions of the plaintiff and the defendant for summary judgment having been presented, the facts having been agreed upon and stipulated to by the parties, and the Court being fully advised,

The Court finds that there is no genuine issue as to any material fact and that defendant is entitled to a summary judgment as a matter of law.

It is therefore ordered, adjudged and decreed that the plaintiff's motion for summary judgment be, and the same is hereby denied, and the defendant's motion for summary judgment be, and the same is hereby granted; and judgment is entered in favor of defendant.